**John R. VAN SYCKLE and Jean L. Van Syckle, Plaintiffs,**

v.

**C.L. KING & ASSOCIATES, INC., and Candace King Weir, Individually and in her capacity as employee of C.L. King and Associates, Defendants.**

No. 89–CV–982 [FJS].

United States District Court, N.D. New York.

May 24, 1993.

O'Connell & Aronowitz, James E. Patrick, David M. Cherubin, Albany, NY, for plaintiffs.

Ferber Greilsheimer Chan & Essner, Robert N. Chan, New York City, E. Stewart Jones, Jr., Troy, NY, for defendants.

SCULLIN, District Judge:

## MEMORANDUM–DECISION AND ORDER

### I. Background

On July 22, 1985, plaintiffs Jean and John Van Syckle invested $732,312.32 in an investment account with defendant C.L. King & Associates, Inc. ("CLKA"). This account was managed by F. Torrance McKenna ("McKenna") until he left the company in the spring of 1987, at which time management of the account was transferred to defendant Candace King Weir ("Weir"), President and founder of CLKA.

Plaintiffs' allege that their investment objectives as to this account were: security of principal, low risk investment, and having no more than approximately $50,000 of the portfolio invested in stocks. Affidavit of Jean L. Van Syckle (1/7/93) ("Van Syckle Aff.") at ¶¶ 11–13. McKenna similarly testified that plaintiffs' investment objectives were conservative, fairly low risk, and income oriented. Deposition of Francis T. McKenna (5/26/92) at 25–26.

The plaintiffs claim that the defendant Weir pressured them into changing their investments, and that in August 1987 the plaintiffs agreed to have their account changed in the following manner:

(a) the Account could be gradually sold and its funds invested in and applied towards treasury bills, money market funds, certificates of deposit and other low risk investments;

(b) [the changes would be] slowly and gradually ma[de] so that Plaintiffs [could], on a monthly basis, monitor those changes to see if they [we]re desirable;

(c) the aforementioned trade changes in the Account could be made on the condition that they would be subject to reduced commission rates; [and]

(d) the Account, after eventually being sold and placed in treasury bills, money market funds, certificates of deposit[ ], and other low risk investments, would be held in such investments until such time that

the Plaintiffs decided upon, and then authorized, further trading.

*See* Amended Complaint at ¶ 54.

In September 1987, plaintiffs claim they discovered that the assets in their account were being rapidly traded and that the defendants were investing substantially more than $50,000.00 of this account in stocks, rather than in treasury bills, money market funds or certificates of deposit as discussed in the August 1987 agreement. Jean Van Syckle ("Mrs. Van Syckle") has testified that she telephoned Weir in mid-to-late September and asked Weir about these trades. Weir allegedly told the plaintiff to "leave the investing to her" and that the plaintiffs "had to take some risks." Van Syckle Aff., ¶ 55.

On October 19, 1987, plaintiffs' portfolio lost approximately $112,000.00 in value. Plaintiffs claim that defendant Weir called Mrs. Van Syckle the following week and advised her not to panic and to refrain from doing anything drastic with the account.

By letter dated November 5, 1987, plaintiffs directed the defendants to suspend all activity in the subject account pending their decision regarding its disposition. Thereafter, plaintiffs gradually transferred their holdings from CLKA to another investment firm.

## II. Procedural History

Plaintiffs commenced the present action on August 14, 1989. Defendants thereafter moved to dismiss plaintiffs' complaint pursuant to Rule 12(b)(6). Plaintiffs opposed that motion and cross-moved to file an amended complaint in this action. In his decision of November 17, 1989, Senior Judge Howard G. Munson dismissed plaintiffs' state law claim which alleged breach of confidential relationship, and denied the remainder of defendants' motion. Judge Munson also granted the plaintiffs' cross-motion to file an amended complaint, which complaint was filed with the Court on January 18, 1990.

Plaintiffs' amended complaint asserts numerous causes of action against the defendants, including: (i) a violation of section 10(b) of the Securities Act, 15 U.S.C. § 78j(b) ("Section 10b"), and rule 10b–5 (17 C.F.R.

§ 240.10b–5) promulgated thereunder ("Rule 10b–5"); (ii) violations of the Investment Advisors Act ("IAA"), (15 U.S.C. §§ 80b–6 & 80b–15(b)); (iii) breach of contract; (iv) breach of fiduciary duty; (v) common law fraud and (vi) conversion.

On November 13, 1992, defendants moved for summary judgment on plaintiffs' complaint, which motion is based upon numerous grounds, including (i) plaintiffs' failure to mitigate their damages, (ii) failure to state a claim for a "churning" violation, 10(b), (iii) ratification of defendants' conduct on the part of the plaintiffs, (iv) the statute of limitations, (v) the statute of frauds, (vi) failure to establish a claim for conversion and (vii) law of the case concerning the claim relating to the confidential relationship.

## III. Discussion

### (A) Failure to Mitigate.

Plaintiffs' first cause of action alleges that the defendants violated Section 10(b) and Rule 10b–5 by intentionally misrepresenting their intent to manage plaintiffs' investment account in compliance with the July 1985 and August 1987 agreements, and that these actions resulted in loss of value in plaintiffs' portfolio. This claim also alleges that the defendants engaged in excessive, unauthorized and unsuitable trading regarding plaintiffs' account. The third cause of action in plaintiffs' amended complaint alleges that the defendants breached the terms of the July 1985 and August 1987 agreements between the parties. Plaintiffs' fourth cause of action alleges that defendant Weir breached the fiduciary duty Weir owed the plaintiffs, and that CLKA, Weir's employer, is liable for the tortious acts of Weir.

▬ Damages for violations of the securities laws are based upon the difference between the value of the consideration given for the securities less the value of the securities received, plus consequential damages that can be proved with reasonable certainty. *Arrington v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 651 F.2d 615, 621 (9th Cir. 1981) (citing *Foster v. Financial Technology Inc.*, 517 F.2d 1068, 1071 (9th Cir.1975)). These damages are limited by what the

plaintiffs could have realized had they acted to preserve their assets or rights when they first learned of the fraud or had reason to know of such fraud. *Arrington v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 651 F.2d at 620; *Grubb v. Federal Deposit Ins. Co.,* 868 F.2d 1151, 1165 (10th Cir.1989). A party cannot recover the part of their loss caused by their own failure to take reasonable steps to avoid further harm once they had reason to know of the wrongdoing. *Arrington v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 651 F.2d at 620. Additionally, New York courts adhere to the universally accepted common law principal that a harmed plaintiff must mitigate damages. *Air et Chaleur, S.A. v. Janeway,* 757 F.2d 489, 494 (2d Cir.1985); *Tynan Incinerator v. Int'l Fidelity Ins. Co.,* 117 A.D.2d 796, 797, 499 N.Y.S.2d 118, 120 (2d Dep't 1986) ("[a] party injured by a breach of contract is required to make reasonable efforts to mitigate its damages"). However, it is the defendant who bears the burden of proof on the issue of mitigation of damages at the time of trial. *See e.g., C–Suzanne Beauty Salon, Ltd. v. General Ins. Co.,* 574 F.2d 106, 113 & n. 13 (2d Cir.1978).

■ Once it has been determined that a plaintiff had a duty to mitigate damages, it must be ascertained whether the plaintiff's action taken in response to the defendant's conduct was reasonable. *See Novelty Textile Mills, Inc. v. C.T. Eastern, Inc.,* 743 F.Supp. 212, 219 (S.D.N.Y.1990) (citation omitted). If the course of conduct chosen by the plaintiff was reasonable, the plaintiff can recover despite the existence of another reasonable course of action that would have further lessened plaintiff's damages. *Id.* (citation omitted).

■ The defendants allege that they are entitled to summary judgment on these claims because the plaintiffs allegedly failed to mitigate their damages. Specifically, they claim that the plaintiffs discovered that the defendants were not complying with the terms of the investment agreements at the time they received the confirmation slips from the stock purchases. They contend that had the plaintiffs either resold the stocks which they allege were improperly purchased, or had directed that the purchases be canceled immediately after discovering the defendants' alleged misconduct, the plaintiffs would have suffered no damages because the aggregate value of the stocks purchased at that time was in excess of their aggregate purchase price. They argue that plaintiffs' knowledge of these transactions, coupled with their failure to request that the defendants cancel any of the stock purchases or sell such stocks at a time when plaintiffs would have suffered no damage, establishes as a matter of law that plaintiffs failed to mitigate their damages in this action. *See* Defendants' reply memorandum of law at 8–11.

Plaintiffs concede that they received confirmation slips for all of the purchases at issue in the present case by October 11, 1987. However, they claim that questions of fact exist concerning whether they acted reasonably in terminating their relationship with the defendants once they discovered the fraud, and by failing to immediately sell these securities.

In the present case, the plaintiffs clearly had a duty to mitigate the damages they allegedly sustained as a result of the defendants' actions. However, this Court finds that there are questions of fact as to whether the plaintiffs acted reasonably after discovering defendant's allegedly wrongful conduct.

Plaintiffs have proffered testimony which indicates Mrs. Van Syckle contacted Weir and objected to the trading in plaintiffs' account toward the end of September 1987, but that Weir told the plaintiffs to place their trust in Weir's abilities as an investment manager. Van Syckle Aff. at ¶¶ 54–58. Plaintiffs also claim that Mrs. Van Syckle directed Weir to stop purchasing stock for plaintiffs' portfolio but was told that numerous trades which were already in progress could not be stopped. *Id.* at ¶ 59. Additionally, plaintiffs have testified that they were "overwhelmed, shocked and confused by Defendants' breach of trust and the whirlwind of transactions that occurred between late August and early October 1987." *Id.* at ¶ 67. Within days of being notified of further unauthorized stock purchases and Weir being informed by Mrs. Van Syckle to cease further

trading in plaintiffs' account, the stock market crashed on October 19, 1987, resulting in damage to the plaintiffs. *Id.* at ¶¶ 60–64.

A review of the testimony submitted by the plaintiffs indicates to this Court that there are questions of fact as to whether the plaintiffs acted reasonably under the circumstances by failing to cancel the trades at issue or by selling the stock which they claim was improperly purchased by Weir. Therefore, this Court must deny defendants' motion for summary judgment on plaintiffs' first, third and fourth causes of action based upon defendants' claim that the plaintiffs' failed to mitigate their damages.

### (B) Churning Allegation.

Plaintiffs' first cause of action also alleges that the defendants churned plaintiffs' account by engaging in excessive, unauthorized and unsuitable trading for the purpose of generating excessive commissions.

 Churning is the creation of commissions by a securities dealer "by inducing transactions in a customer's account which are disproportionate to the size and character of the account." *Newburger Loeb & Co., Inc. v. Gross,* 563 F.2d 1057, 1069 (2d Cir. 1977), *cert. denied,* 434 U.S. 1035, 98 S.Ct. 769, 54 L.Ed.2d 782 (1978). In order to state a claim for churning under the securities laws, a plaintiff must establish that the (i) trading in the account was excessive in light of his investment objectives; (ii) broker exercised control over the account; and (iii) broker acted with intent to defraud or with willful or reckless disregard for the interests of his client. *Levine v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 639 F.Supp. 1391, 1394 (S.D.N.Y.1986).

 In their motion for summary judgment on this claim, the defendants argue that the plaintiffs cannot establish that the trading in plaintiffs' account was excessive. They argue that there is no evidence of any "in and out" trading in plaintiffs' portfolio, which is typically present in accounts that have been churned, and that the commissions earned by the defendants were *de minimis*

relative to the value of plaintiffs' portfolio. Defendants' reply memorandum of law at 12–13.

Plaintiffs claim that their investment objectives never changed throughout the period of time that the defendants managed plaintiffs' account—plaintiffs consistently sought a high level of safety regarding the principal of their portfolio and a steady stream of income for the plaintiffs for the remainder of their lives. They argue that, prior to the unauthorized trading, their account was creating very small fees and no commissions for the defendants, and that Weir engaged in the subject transactions in order to generate commissions for the defendants. As evidence of this alleged churning, plaintiffs note that, under Weir's management of plaintiffs' account, the defendants generated approximately $9,000 in commissions in less than a two-month period concerning this account.

In the present case, it is clear that the defendants exercised control over plaintiffs' account. However, there are questions of fact as to whether the trading in this account was excessive in light of plaintiffs' investment objectives, and whether Weir intended to defraud plaintiffs, or acted with a willful or reckless disregard for the interests of plaintiffs, in managing their account. As noted above, plaintiffs contend that their account was producing little income for the defendants prior to Weir's management of same, but that Weir engaged in unauthorized trading in an effort to, *inter alia,* generate excessive commissions. Plaintiffs have proffered evidence which indicates that their investment objectives were related to security of principal, low risk, and having no more than approximately $50,000 of their portfolio invested in stocks. They contend that these objectives were subsequently modified in a manner that required any investment changes in this account to be made slowly and gradually and in such a way that would have enabled the plaintiffs to monitor, on a monthly basis, such changes in order to determine if they were desirable.[1] If proven, these claims may establish a cause of action for churning regarding plaintiffs' portfolio.

---

**1.** As discussed *infra,* plaintiffs' claim which seeks damages based upon defendants' breach of the

alleged August 1987 agreement is barred by the statute of frauds.

Therefore, this Court must deny defendants' motion for summary judgment on plaintiffs' churning claim.

### (C) Ratification.

CLKA and Weir contend that plaintiffs' causes of action alleging securities fraud, breach of fiduciary duty and common law fraud should be dismissed because the plaintiffs purportedly ratified defendants' conduct and failed to object to the trades at issue until the plaintiffs' evaluated the results of such trades.

■ Plaintiffs claim that they were unsophisticated investors who were unaware that they could cancel trades after receiving confirmation slips regarding same. Van Syckle Aff. at ¶ 70.[2] They also claim that Weir informed them that certain stock purchases into which Weir had entered could not be canceled. *Id.* at ¶ 59.

■ Ratification of unauthorized trading occurs only when it is clear from all the circumstances that the customer intends to adopt the trade as his own. Knowledge of the pertinent facts and the clear intent to approve the unauthorized action is a precondition to ratification. *See, e.g., Meyers v. Brooks Weinger*, 1992 WL 123662, *7–8, 1992 U.S.Dist. Lexis 7031, *8–9 (S.D.N.Y. May 26, 1992).

■ In the present case, this Court cannot find, as a matter of law, that the plaintiffs clearly intended to adopt the disputed trades as their own. Mrs. Van Syckle claims to have called Weir in September 1987, at which time she informed Weir to refrain from entering into any further trades concerning plaintiffs' account without the express ap-

proval of the plaintiffs. Van Syckle Aff. at ¶¶ 54–60. However, she was allegedly told that certain stock purchases into which Weir had entered could not be canceled. *Id.* at ¶ 59. Additionally, it is unclear whether the plaintiffs were aware that they could, in fact, cancel the stock purchases at issue. *See, e.g.,* Van Syckle Aff. at ¶ 70. Thus, their inaction may have been the result of ignorance of their rights under the investment agreement, rather than a clear intent to approve the allegedly unauthorized actions of the defendants. In light of these factual issues, this Court must deny defendants' motion for summary judgment on this aspect of plaintiffs' complaint.

### (D) Plaintiffs' claim under the Investment Advisors Act.

The second count in plaintiffs' amended complaint alleges that the plaintiffs were damaged by the "deceptive acts and omissions and fraudulent conduct and activity of Defendant Weir," and that such conduct violated the IAA.

The defendants have moved for summary judgment on this aspect of plaintiffs' complaint on the basis that any such claim is barred by the applicable statute of limitations. Plaintiffs claim that their claim, which was brought approximately 22 months after the plaintiffs terminated their relationship with the defendants.

■ In *Kahn v. Kohlberg, Kravis, Roberts & Co.*, 970 F.2d 1030 (2d Cir.1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 494, 121 L.Ed.2d 432 (1992), the Second Circuit recently articulated the statute of limitations that is applicable to claims brought under the Investment Advisors Act. The *Kahn* court

---

**2.** As the defendants point out, at her deposition in this action, Mrs. Van Syckle appears to have testified, in substance, that she was aware that these trades could, in fact, be canceled. *See* Deposition of Jean Van Syckle (5/9/90) at p. 198. While defendants are correct in noting that a party cannot create a triable issue of fact simply by submitting an affidavit that conflicts with such party's sworn deposition testimony, *see, e.g., Miller v. Int'l Telephone & Telegraph Corp.*, 755 F.2d 20, 24 (2d Cir.), *cert. denied* 474 U.S. 851, 106 S.Ct. 148, 88 L.Ed.2d 122 (1985), it is also clear that if a witness has made an affidavit, and her deposition has also been taken, and the two in

some way conflict, "the court may not exclude the affidavit from consideration in the determination of the question whether there is any genuine issue as to any material fact." *Perma Research and Development Co. v. Singer Co.*, 410 F.2d 572, 578 (2d Cir.1969).

As this court has already noted, there are numerous questions of fact in this action that must be resolved by the trier of fact at the trial of this matter. At such time, the defendants will be afforded ample opportunity to question the plaintiffs as to their beliefs regarding their rights under subject agreement.

noted that claims under this Act must be brought "either one year from the commission of the wrong or one year [from the discovery of the wrong but no later than] three years from [the commission of] the wrong." *Id.* at 1039. Discovery of wrongful conduct under the IAA occurs when a plaintiff obtains actual knowledge of the facts giving rise to the action, or notice of the facts, which, in the exercise of reasonable diligence, would have led to actual knowledge. *Id.,* 970 F.2d at 1042 (*citing Ingenito v. Bermec Corp.,* 441 F.Supp. 525, 554 (S.D.N.Y.1977)). In the present case, the plaintiffs discovered the allegedly wrongful conduct of the defendants no later than November 5, 1987, the date on which the plaintiffs wrote Weir and requested that plaintiffs' account with CLKA be liquidated.

 The plaintiffs filed the present action on August 14, 1989—more than one year after the wrong of which the plaintiffs complain,[3] and more than one year after the discovery of such wrong. Therefore, under either applicable statute of limitations, plaintiffs' second cause of action is time-barred and must be dismissed. *See Kahn v. Kohlberg, Kravis, Roberts & Co.,* 970 F.2d at 1042.

(E) Breach of Contract.

Plaintiffs' third cause of action alleges that the parties entered into an agreement with CLKA in July 1985 wherein it was agreed that CLKA would invest plaintiffs' money in such a manner so as to avoid risk to the principal and invest no more than $50,000 in stocks in such account. Amended Complaint, ¶¶ 93–96. They further contend that this agreement was supplemented or modified by the August 1987 agreement described *supra.*

 The defendants argue that plaintiffs' breach of contract claim is barred by the Statute of Frauds. They note that section 8–

319(a) of the Uniform Commercial Code ("U.C.C."), as adopted by New York, requires that any contract for the sale of securities be reduced to writing.[4]

The plaintiffs contend that the July 1985 agreement clearly satisfies the statute of frauds requirement, and that the August 1987 agreement only related to restrictions on the *purchase* of securities, not the sale of same, and therefore did not have to be reduced to a writing.

McKenna's letter to the plaintiffs of July 17, 1985 discussed a proposed investment portfolio for the plaintiffs. This proposal indicated that $50,000 of this account would be invested in stocks—an amount consistent with plaintiffs' claimed investment objectives. On July 22, 1985, the parties entered into a written Investment Management Agreement. Under this agreement, the plaintiffs noted that safety of the principal of their account was "high" and that margining of securities on this account was unacceptable. *See* Van Syckle Aff., Exhibit E. These writings clearly satisfy the writing requirement of § 8–319(a) of the U.C.C.

 Turning to the alleged August 1987 agreement, its terms were never reduced to any writing. Contrary to plaintiffs' assertions, the oral agreement which the parties allegedly entered into in August 1987 clearly related to the sale of securities. *See* Amended Complaint at ¶ 54, discussed *supra.* Therefore, pursuant to U.C.C. § 8–319(a), any such agreement was required to be in writing in order to be enforceable. Additionally, this alleged oral agreement could not have modified or otherwise altered the terms of the July 1985 contract. As the Fourth Department noted in *Ber v. Johnson,* 163 A.D.2d 817, 558 N.Y.S.2d 350 (4th Dep't 1990):

> Where an original agreement comes within the provision of the statute of frauds re-

---

3. In this case, the "wrong" of which the plaintiffs complain relates to the allegedly deceptive acts, omissions and fraudulent conduct of Weir that caused the plaintiffs damage when the stock market crashed on October 17, 1987. Thus, the last possible date on which the "wrong" could have been committed by Weir was October 17, 1987.

4. This provision provides, in pertinent part, that:
 A contract for the sale of securities is not enforceable ... unless there is some writing signed by the party against whom enforcement is sought ... sufficient to indicate that a contract has been made for sale of a stated quantity of described securities at a defined or stated price. (McKinney 1990).

quiring certain agreements to be in writing, the statute of frauds renders invalid and ineffectual a subsequent oral agreement changing the terms of the written contract, no matter how slight the attempted variation or by whom it was made.

*Id.* at 818, 558 N.Y.S.2d at 351 (citations omitted).

Since no evidence has been proffered by the plaintiffs in response to the present motion which indicates that there is any writing that memorializes the alleged August 1987 agreement, defendants' motion for summary judgment relating to claims based upon same must be granted.

### (F) Breach of Confidential Relationship.

In his order of November 17, 1989, Judge Munson dismissed plaintiffs' state law claim which alleged breach of confidential relationship. Since this ruling is clearly the law of this case, defendants' motion to dismiss the fifth cause of action in plaintiffs' amended complaint, which alleges that the defendants breached a confidential relationship that existed between the parties herein, must be granted.

### (G) Conversion.

Plaintiffs' seventh cause of action alleges that the defendants converted plaintiffs' account by (i) purchasing stock and selling bonds and treasury bills for the portfolio without authority from the plaintiffs and (ii) trading in plaintiffs' account after the plaintiffs had directed defendant Weir to halt all trading in this account.

■ Conversion of property is the unauthorized exercise of dominion and control over property by one who is not its owner which interferes with another person's superior possessory rights. *Cauble v. Mabon Nugent & Co.*, 594 F.Supp. 985, 995 (S.D.N.Y.1984). A party who wrongfully sells stock of another may be found guilty of conversion. *See, e.g., Schultz v. Commodity Futures Trading Comm'n*, 716 F.2d 136, 139–40 (2d Cir.1983).

The defendants argue that they are entitled to summary judgment on this claim because plaintiffs' account was purportedly never converted. Defendants claim that they were in lawful possession of plaintiffs' account and that they returned the assets remaining in same upon plaintiffs' request to do so.

The plaintiffs concede that the defendants were initially in lawful possession of plaintiffs' property. However, they have submitted evidence which indicates that the defendants exceeded such authority when they transformed plaintiffs' bond portfolio into a stock portfolio and executed trades in plaintiffs' account after being informed to stop trading in same.

■ There are questions of fact concerning whether Weir exceeded her authority when she sold the bonds in plaintiffs' portfolio and purchased more than $50,000 worth of stocks for plaintiffs' account. Additionally, there are questions of fact as to whether Weir engaged in transactions with this account after the plaintiffs had informed Weir to cease any further trading in same. Since such conduct on the part of Weir, if proven, would establish a claim alleging conversion, *see, e.g., Schultz v. Commodity Futures Trading Comm'n*, 716 F.2d at 139–40, defendants' motion for summary judgment regarding plaintiffs' claim alleging conversion must be denied.

### IV. *Conclusion*

Defendants' motion for summary judgment is granted with respect to plaintiffs' second and fifth causes of action, which allege that the defendants violated the Investment Advisers Act and breached a confidential relationship that existed between the parties herein. Defendants' motion also is granted as to plaintiffs' third cause of action insofar as that claim alleges that the defendants breached the terms of the alleged August 1987 agreement. It is denied in all other respects.

IT IS SO ORDERED.