J-A28011-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| REZRO, INC., D/B/A AMERICAN ATM | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| v. | : | |
| | : | |
| MAXIMO E. LANFRANCO, | : | |
| INDIVIDUALLY AND D/B/A MAXI | : | |
| GROCERY | : | |
| | : | |
| Appellee | : | No. 178 EDA 2017 |

Appeal from the Order Dated November 16, 2016
In the Court of Common Pleas of Philadelphia County
Civil Division at No(s): October Term, 2013, NO. 000297

| | | |
|---|---|---|
| REZRO, INC., D/B/A AMERICAN ATM | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| v. | : | |
| | : | |
| MAXIMO E. LANFRANCO, | : | |
| INDIVIDUALLY AND D/B/A/ MAXI | : | |
| GROCERY | : | |
| | : | |
| Appellee | : | No. 633 EDA 2017 |

Appeal from the Order January 13, 2017
In the Court of Common Pleas of Philadelphia County
Civil Division at No(s): October Term, 2013 No. 000297

BEFORE: GANTMAN, P.J., PANELLA, J., and DUBOW, J.

MEMORANDUM BY GANTMAN, P.J.:                    **FILED MARCH 13, 2018**

Appellant, Rezro, Inc., d/b/a/ American ATM, appeals from the order entered in the Philadelphia County Court of Common Pleas, which denied Appellant's post-trial motion and entered judgment on the verdict. We

affirm.

In its opinions, the trial court fully and correctly set forth the relevant facts and procedural history of this case. Therefore, we have no reason to restate them. We add that Appellant filed a second notice of appeal at docket number 633 EDA 2017 on February 10, 2017, from the entry of judgment. The trial court did not order Appellant to file a concise statement of errors pursuant to Pa.R.A.P. 1925(b), and Appellant did not file one. On March 8, 2017, the parties filed a stipulation to consolidate the appeals.

Appellant raises the following issues for our review:

> DID THE [TRIAL] COURT ERR IN PLACING THE BURDEN OF PROOF REGARDING MITIGATION OF DAMAGES UPON [APPELLANT] RATHER THAN [APPELLEE]?
>
> DID THE [TRIAL] COURT ERR IN DETERMINING THAT [APPELLEE] CARRIED ITS BURDEN OF PROOF WHERE IT DID NOT PRESENT TESTIMONY OR EVIDENCE AT THE JUNE 15, 2016 HEARING, DID NOT SHOW HOW [APPELLANT] COULD HAVE AVOIDED ITS DAMAGES, AND DID NOT SHOW THE AMOUNT BY WHICH [APPELLANT'S] DAMAGES COULD HAVE BEEN REDUCED?
>
> DID THE [TRIAL] COURT ERR IN DISALLOWING ANY DAMAGES SUFFERED BY [APPELLANT] AFTER AUGUST 12, 2013[,] RATHER THAN REDUCING THEM BY THE AMOUNT PROPERLY SHOWED BY [APPELLEE] THAT [APPELLANT] WOULD HAVE BEEN ABLE TO MITIGATE THROUGH REASONABLE EFFORTS?

(Appellant's Brief at 3-4).

After a thorough review of the record, the briefs of the parties, the applicable law, and the well-reasoned opinions of the Honorable Idee C. Fox, we conclude Appellant's issues merit no relief. The trial court opinions

comprehensively discuss and properly dispose of the questions presented. (**See** Trial Court Opinion, filed February 28, 2017, at 1-2 unpaginated; Opinion in Support of Order, filed November 16, 2016, at 6-13 unpaginated) (finding: **(1-3)** Appellee unplugged Appellant's ATM on July 24, 2013, but did not request removal until August 12, 2013; Appellant did not have opportunity to mitigate damages during that timeframe and is entitled to lost profits for that time period; nevertheless, Appellant waited five months after Appellee's request to remove ATM, which was unreasonable and insufficient; Appellee's August 2013 letter demanded that Appellant remove its ATM as soon as possible; Appellant failed to remove its ATM despite testimony from Appellant's representative, Mr. Mirzai, that he would ordinarily remove ATM under those circumstances; Appellant failed to mitigate damages from August 13, 2013 to January 2014, when Appellant finally removed its ATM; regarding time period after Appellant removed ATM, Appellant did not use reasonable diligence to mitigate damages; Mr. Mirzai provided only vague testimony as to his efforts to place ATM in other locations, which lacked sufficient details such as dates, stores, or customer names; Mr. Mirzai presented no evidence to corroborate his efforts; picture of ATM shown to potential customers was of ATM in unattractive condition with graffiti and scratches; Appellant made no effort to clean machine or make it more attractive before showing it for placement; Mr. Mirzai admitted he stopped showing ATM at some point, but he failed to indicate when he started

showing it or for how long he showed it; Appellant admitted in interrogatories that as of May 1, 2014, ATM was in storage and slated for parts; any efforts to show ATM to potential customers occurred for only four months, between January 2014 and May 2014, which court found unreasonable, where approximately forty-two months remained on parties' contract; court found incredible Mr. Mirzai's testimony about showing pictures of ATM to potential customers, where that testimony was inconsistent with Appellant's answers to interrogatories; Appellant also did not make reasonable efforts to sell ATM parts and presented no evidence as to efforts made to sell or rent parts, or even sell whole ATM; Mr. Mirzai admitted ATM was unattractive, marked with graffiti and scratches, and obsolete; Mr. Mirzai's testimony established ATM was at end of its useful life of five to seven years, and Appellant presented no evidence that ATM would have lasted or continued to work; ATM no longer had value and was of no use; therefore, Appellant was entitled to damages in form of lost profits only from July 24, 2013 to August 12, 2013, in amount of $796.00).  Accordingly, we affirm based on the trial court opinions.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 3/13/18

**IN THE COURT OF COMMON PLEAS PHILADELPHIA COUNTY
FIRST JUDICIAL DISTRICT OF PENNSYLVANIA
CIVIL TRIAL DIVISION**

| | | |
|---|---|---|
| **REZRO, INC., d/b/a AMERICAN ATM** | : | **OCTOBER TERM, 2013** |
| | : | **NO.   0297** |
| **v.** | : | |
| | : | |
| **MAXIMO LANFRANCO d/b/a** | : | **SUPERIOR COURT NO.** |
| **MAXI GROCERY, ET AL** | : | **633 EDA 2017** |

**OPINION**

Plaintiff, Rezro Inc., d/b/a American ATM, filed this action against Defendant Maximo Lanfranco, d/b/a Maxi Grocery, for breach of contract relating to the removal of an ATM machine. The matter originally proceeded to bench trial before the Honorable Gary F. Di Vito, who entered a decision in favor of Plaintiff in the amount of $50,148.50. Defendant's Post-Trial motions were denied and an appeal followed under 107 EDA 2015. This court was assigned to write the opinion as Judge Di Vito had since retired from the bench. The opinion was filed on April 15, 2015 ("April 2015 Opinion"). The Superior Court vacated the judgment and remanded the matter to this court for a determination of whether Plaintiff mitigated its damages and provided competent proof of lost profits. After a hearing, this court entered a decision docketed November 17, 2016, which addresses the issues on remand and found in favor of Plaintiff in the amount of $796 ("November 2016 Order").

Plaintiff filed a timely Motion for Post-Trial Relief and Defendant filed a Cross-Motion for Post-Trial Relief. Prior to the disposition of the motions, Plaintiff appealed the November 2016 Order under 178 EDA 2017. The court believes Plaintiff filed the

Rezro, Inc. Vs Lanfranco Etal-OPFLD



13100029700120

COPIES SENT PURSUANT TO Pa.R.C.P. 236(b) D. KELLY 02/28/2017

appeal pursuant to Pa.R.C.P. 227.1(i).  On February 13, 2017, this court filed its opinion for the appeal under 178 EDA 2017.

On January 13, 2017, this court denied Plaintiff's Motion for Post-Trial Relief.  In doing so, this court adopted its decision set forth in the November 2016 Order.  The court further found Defendant's Cross-Motion raised issued beyond the scope of the remand and no further response was required.

Plaintiff now appeals the decision denying Plaintiff's Post-Trial Motion.   The basis for this court's decisions in this matter are set forth in the April 2015 Opinion and November 2016 Order, copies of which are appended hereto.

**BY THE COURT:**

IDEE C. FOX, J.

Date:  2/23/17

IN THE COURT OF COMMON PLEAS PHILADELPHIA COUNTY
FIRST JUDICIAL DISTRICT OF PENNSYLVANIA
CIVIL TRIAL DIVISION

| | | |
|---|---|---|
| REZRO, INC., d/b/a AMERICAN ATM | : | OCTOBER TERM, 2013 |
| | : | |
| v. | : | NO.  0297 |
| | : | |
| MAXIMO LANFRANCO d/b/a MAXI GROCERY | : | |

## FINDINGS AND DECISION

This is an action filed by Plaintiff, Rezro Inc., d/b/a American ATM, against Defendant Maximo Lanfranco, d/b/a Maxi Grocery, for breach of contract.  The matter initially proceeded to bench trial before the Honorable Gary F. Di Vito who entered a decision in favor of Plaintiff.  Defendant's Post-Trial motions were denied and an appeal followed.  The Superior Court vacated the judgment and remanded the matter to this Court for a determination of whether Plaintiff mitigated its damages and provided competent proof of lost profits.  After a hearing, this Court makes the following findings and reaches various conclusions.

## FACTUAL and PROCEDURAL HISTORY

Plaintiff filed a Complaint against Defendant alleging breach of contract with regards to an agreement titled "ATM Floor Space Lease" ("Agreement") to place

Plaintiff's ATM machine in Defendant's grocery store located at 6224 Lebanon Avenue in Philadelphia. Defendant purchased the store at the end of 2008. The previous owner had installed the ATM machine about a year prior to Defendant's ownership of the store. After Plaintiff learned of the new ownership, Plaintiff's authorized representative Christopher Mirzai ("Mr. Mirzai") came to Defendant's store to enter into the Agreement with Defendant. The Agreement was signed by both parties and commenced on January 2, 2009 with an initial term of 48 months. Under Paragraph IV (A) and (B), a renewal lease term of 48 months would commence if no written notice was given at least 120 days prior to the termination of the initial term ("Renewal Provision"). The Agreement also contained a "No-Competition" provision wherein Defendant agreed not to place or operate another ATM or cash back device in the store throughout the term of the Agreement ("No-Competition Provision"). The total surcharge for a customer's ATM withdrawal was $1.75 ("Surcharge Fee"). Plaintiff paid Defendant fifty cents ($0.50) per surcharge. Plaintiff received the remaining $1.25. Plaintiff also collected an interchange fee directly from the networks that was not shared with Defendant ("Interchange Fee"). Under Paragraph I of the Agreement, the sum paid to Defendant constituted rent for the leased floor space within Defendant's store.

Plaintiff did not receive written notice of termination during the initial term. The Agreement therefore automatically renewed for another 48 month period starting January 2, 2013. However, on July 24, 2013, Defendant unplugged Plaintiff's ATM and placed another company's ATM in the store. Around August 12, 2013, Defendant sent a letter to Plaintiff requesting removal of the ATM machine. Plaintiff commenced this

action in October 2013. In January 2014, Plaintiff removed the ATM machine and placed it in storage.

The matter proceeded to a Non-Jury trial before Judge Di Vito on November 17, 2014. Mr. Mirzai appeared as Plaintiff's representative. Mr. Lanfranco appeared as well and was provided a Spanish-speaking interpreter. At trial, Plaintiff presented Exhibits P3 and P4 as proof of damages, described in more detail, *infra*.

Following trial, Judge Di Vito entered Findings of Fact and Conclusions of Law. Judge Di Vito found Mr. Mirzai credible and entered a verdict in favor of Plaintiff in the amount of $50,148.50 for loss of future income based on Exhibits P3 and P4. Judge Di Vito's Findings and Conclusions are attached hereto and incorporated herein. After Defendant's Post-Trial Motions were denied, Defendant appealed to the Superior Court under 107 EDA 2015. Defendant filed a 1925(b) Statement of Matters Complained of on Appeal which raised eleven (11) issues. One of the issues on appeal contended Plaintiff did not suffer cognizable damages. This Court was assigned to write the Opinion, as Judge Di Vito had retired from the bench. A copy of the Opinion is attached hereto and incorporated herein. As to the issue of damages, this Court did not offer an opinion on Judge Di Vito's findings and therefore did not disturb them.

In February 2016, the Superior Court vacated the judgment and remanded the matter for this Court to make a determination as to whether Plaintiff mitigated its damages and provided competent proof of lost profits.

Thereafter this Court conducted a hearing and received testimony and evidence pursuant to the issues set forth by the Superior Court on remand. Mr. Mirzai once

again testified on behalf of Plaintiff. Defendant did not offer any testimony. Based on Mr. Mirzai's testimony, Plaintiff waited until this action was commenced to remove the ATM machine from Defendant's store. According to Mr. Mirzai, Plaintiff hoped to settle and avoid litigation. NT 6/15/16 p. 13. Plaintiff ordinarily waited in this fashion only if the owner did not demand the machine be taken out immediately. Id.

As to the condition of the ATM machine, the ATM machine was five to seven years old when unplugged the machine in July 2013. NT 6/15/16 p. 15. At that time, there were approximately 42 months remaining under the Agreement. However, the average useful life of the ATM machine is only 5 to 7 years. NT 6/15/16 p. 22. Mr. Mirzai testified that "[a]nything beyond that is fortunate" and "playing with the casino's money." NT 6/15/16 p. 12, 30. Further, the ATM machine was covered in graffiti and had deep scratches. NT 6/15/16 p. 16. Because of the ATM machine's age, each transaction was slower as compared to newer machines in 2014. NT 6/15/16 p. 19. The ATM machine was technologically obsolete and did not have the technologically required for a chip reader. NT 6/15/16 p. 23

As to Plaintiff's efforts to mitigate, Mr. Mirzai testified that the ATM machine has been in Plaintiff's warehouse since removal from Defendant's store. NT 6/15/16 p. 24. Sometime after the removal, Plaintiff showed prospective new customers photographs of various machines in stock available for use, one of which was the ATM machine at issue. NT 6/15/16 p. 18. No customer wanted the ATM machine because of its physical condition and age. NT 6/15/16 p. 18-19, 35-36. At some point Plaintiff determined the ATM machine could not be placed. NT 6/15/16 p. 24. The ATM

machine remained in storage and was "slated to be used for parts but it has not be touched." NT 6/15/16 p. 25. The parts could be used if need be. NT. 6/15/16 p. 26.

On May 1, 2014, Plaintiff had submitted answers to Defendant's interrogatories on the issue of mitigating damages. *See* Exhibits P7a and P7b. As of that date, the ATM machine was in storage and slated to be used for parts. *See* Exhibit P7b No. 5. Interrogatory No. 6 asked specifically about all efforts Plaintiff took to mitigate damages and proof thereof. See Exhibit P7a No. 6. In response, Plaintiff stated that "[n]ew locations want new machines." Exhibit P7b No. 6. However, there were times when stores did accept older machines. Id. The response omitted any information about Plaintiff showing prospective customers photos of the ATM machine.

As to the issue of lost profits, Plaintiff reintroduced Exhibits P3 and P4 which had been admitted into evidence by Judge Di Vito at trial. Exhibit P3 is a record of the ATM machine's daily transactions beginning January 7, 2012 and ending July 24, 2013, the date the machine was disconnected ("ATM Transaction Summary"). NT 11/27/14 p. 19. The ATM Transaction Summary includes the total number of daily withdraws and corresponding surcharges[1]. It also contains the store's address to show that the transactions pertain to Defendant.

Exhibit P4 is a twenty-three (23) page compilation exhibit showing payments made to Defendant and Interchange Fees paid to Plaintiff. Specifically, the second to

---

[1] Mr. Mirzai testified that the surcharge and withdrawal numbers generally match except for instances when a customer's card did not charge a surcharge.

fourth pages of Exhibit P4 is a historical printout of checks Plaintiff paid to Defendant from January 2009 to July 2013 ("Revenue Check Summary"). NT 11/27/14 p. 31-32. The Revenue Check Summary lists the specific check numbers, banks from which the funds were withdrawn and amounts paid to Defendant. The next five pages of Exhibit P4 are copies of five negotiated checks dated January 2013 to June 2013. NT 11/27/14 p. 32-33. These checks were presented to Defendant and cashed. Id. While there are copies of only five checks, physical checks were also provided to Defendant for the months prior to January 2013. NT 11/27/14 p. 32. The remaining pages of Exhibit P4 show the total number of Interchange Fees paid to Plaintiff from June 2012 to June 2013. NT 11/27/14 p. 33. The first page of Exhibit P4 is a chart summarizing the information collected from the above referenced pages of Exhibit P4 for the period June 2012 through June 2013. The chart shows Plaintiff's claim for damages based on the average amount of revenue Plaintiff received for that time period ($1,217.20/month), multiplied by the number of months remaining on the Agreement after Defendant's breach (41.2 months), which equals $50,148.51.

## DECISION

### Mitigation of Damages

As to the issue of mitigation damages, the non-breaching party to a commercial contract has a duty to mitigate damages. *See Northeastern Vending Corp. v. P.D.O. Inc.*, 414 Pa. Super. 200, 606 A.2d 936 (1992). "A party who suffers a loss has a duty

to make a reasonable attempt to mitigate damages, but the burden is on the party who breaches the contract to show how further loss could have been avoided through the reasonable efforts of the injured party." *Pontiere v. James Dinert, Inc.*, 426 Pa. Super. 576, 587, 627 A.2d 1204, 1209 (1993) (citation omitted). If the course of conduct chosen by the plaintiff was reasonable, the plaintiff can recover despite the existence of another reasonable course of action that would have further lessened plaintiff's damages. *O'Sullivan v. Joy Techs., Inc.*, 446 Pa. Super. 140, 153, 666 A.2d 664, 670–71 (1995), citing *Van Syckle v. C.L. King & Assoc., Inc.*, 822 F.Supp. 98, 102 (N.D.N.Y.1993).

In *Northeastern Vending Corp.*, cited in the Superior Court's remand decision, Northeastern Vending Corp. entered into two exclusive vending machine contracts to place its vending machines in P.D.O.'s store. P.D.O. later replaced Northeastern's machines with those of another company. The trial court found P.D.O. breached the contracts and Northeastern had a duty to mitigate damages but failed to do so. On appeal, the Superior Court affirmed the trial court:

> [W]e find that [Northeastern] did not fulfill its duty to mitigate damages. [Northeastern] did not remove its machines from [P.D.O.'s store] until...almost seven months after P.D.O. stopped using them. Once removed, they were placed in a warehouse. Accordingly, the trial court did not err when it found that Northeastern had a duty to mitigate its damages which it did not fulfill.

*Northeastern Vending Corp* at 938-39.

Here, having evaluated the evidence presented by the parties, this Court finds Defendant unplugged the ATM machine on July 24, 2013 but waited until August 12,

2013 to request Plaintiff remove it from Defendant's store. Plaintiff did not have an opportunity to mitigate damages between July 24, 2013 and August 12, 2013 and is therefore awarded lost profits for this period, as detailed below.

However, similarly to the plaintiff in *Northeastern Vending Corp.*, Plaintiff here failed to remove the ATM machine for another five (5) months after Defendant's August 2013 letter. While Plaintiff claims he waited to remove the machine in order to negotiate and avoid litigation, the Court finds this to be unreasonable and insufficient. Defendant's August 2013 letter demanded the ATM machine be removed as soon as possible. Plaintiff failed to do so despite Mr. Mirzai's admission that he would ordinary remove a machine under similar circumstances. NT 6/15/16 p. 13. Accordingly, Plaintiff failed to mitigate damages from August 13, 2013 to January 2014.

As to the time period after January 2014, Plaintiff did not use reasonable diligence to mitigate damages and therefore failed to mitigate damage. Mr. Mirzai provided only vague testimony as to his efforts to place the ATM machine into other locations. He provided generalized scenarios of showing ATM machines without sufficient details of specific incidents relating to this particular ATM machine, such as dates, store or customer names. No evidence was submitted to corroborate his efforts, such as the picture of the machine he allegedly showed customers. It can be gleaned from Mr. Mirzai's testimony that the picture allegedly shown to customers was of the ATM machine in an unattractive condition with graffiti and scratches. Mr. Mirzai did not make any efforts to clean the machine or make it more attractive before showing it for placement.

Mr. Mirzai further admitted that he ceased showing the ATM machine at some point, but there was no evidence as to when Plaintiff first started to show the ATM machine for placement, or for how long. The Court can only guess that Plaintiff was no longer showed the machine prior to May 1, 2014, the date Plaintiff admits in the interrogatory responses that the machine was in storage and slated for parts. Accordingly any alleged, unspecified efforts to show the ATM machine would have been made for only a four month period, which this Court finds to be unreasonable in light of the fact that there were approximately 42 months remaining under the Agreement.

The testimony at the June 15, 2016 hearing was also inconsistent with Plaintiff's answers to Defendant's interrogatories. The interrogatory asked about all efforts made to mitigate damages. However, Plaintiff's answer did not state that Plaintiff tried to show the ATM machine to customers, as claimed at the June 16, 2016 hearing. Instead, the interrogatory answer admits that in the past, Plaintiff has been able place older machines in new locations. To this extent, the Court finds Mr. Mirzai's testimony at the hearing not credible.

The evidence further shows that Plaintiff did not make reasonable efforts to sell the ATM machine parts. Mr. Mirzai testified only that the machine was "slated to be used for parts" and the parts are available for use if need be. However, the parts have "not been touched." NT 6/15/16 p. 24, 25. No evidence was provided as to any efforts Plaintiff made to sell the parts, rent the parts or even sell the ATM machine as a whole.

Finally, Mr. Mirzai admitted that the machine was unattractive, beat up with graffiti and scratches, and obsolete. His testimony established that the ATM machine

was at the end of its useful life of 5 to 7 years and no evidence was submitted as to whether the ATM machine would have lasted or continued to work. The machine no longer had any value and was of no use.

Accordingly, Plaintiff failed to mitigate damages after receiving Defendant's August 2013 letter. Plaintiff is not awarded damages for the remaining term of the Agreement from August 13, 2013 on. Instead, Plaintiff is only awarded damages in the form of lost profits for the twenty (20) day period from July 24, 2013 and August 12, 2013.

**Lost Profits**

Where there is a breach, damages are awarded to place the injured party in the position he would have been had the contract been fully carried out. *See Northeastern Vending Corp., supra,* at 938, citing *Bellefonte Area School District v. Lipner,* 81 Pa.Cmwlth. 334, 339, 473 A.2d 741, 744 (1984). As explained in the Superior Court's remand decision, Pennsylvania does not recognize the theory of "lost volume seller". *See id.* at 938. Instead, Pennsylvania law allows a non-breaching party to recover damages in the form of lost profits. *Id.* at 939. To recover lost profits:

> [T]here must be affirmative evidence that the loss resulted from the breach of contract. It is not necessary that the amount be shown with absolute or mathematical certainty, but only that it be approximated by competent proof.

*Id.* (citations omitted).

Here, the data presented in Exhibits P3 and P4 provides competent proof of lost profits. Again, Exhibit P3, the ATM Transaction Summary, is proof of the ATM machine's total number of daily surchargeable withdraws from January 7, 2012 to July

24, 2013. Pages two (2) through twenty-three (23) of Exhibit P4 is competent evidence of the fees Plaintiff paid to Defendant as rent of the leased floor space, and the Interchange Fees Plaintiff collected from the networks. Pursuant to Mr. Mirzai's testimony at trial, Exhibits P3 and P4 are contemporaneously kept business and accounting records. Judge Di Vito found Mr. Mirzai's testimony to be credible. Further, Defendant never challenged the accuracy or authenticity of these exhibits either at trial or the remand hearing. While Defendant claims that Plaintiff requests a gross profit amount and not a net profit amount, this Court disagrees. As explained above, Plaintiff paid Defendant $0.05 per surchargeable withdraw as rent for the leased floor space. This is proven by pages 2 through 9 of Exhibit P4. Pages 11 through 23 of Exhibit P4 provide net Interchange Fees which take into account fees paid to the networks. Accordingly, any profit payable to Plaintiff is a net lost profit.

Next, as to the calculation of lost profits, the first page of Exhibit P4 shows the average amount of net income Plaintiff received for the thirteen month period between June 2012 through June 2013. Plaintiff then multiplied this number by the remaining number of months under the Agreement for a total amount it claims as lost profits, $50,148.50. However, as Plaintiff is to be awarded damages for only a twenty day period, a per diem rate is required. Accordingly, the Court calculates lost profits based on a twelve month period as follows:

| Date | Surchargeable Withdraws | Plaintiff's Portion of Surcharge Fee ($1.25 x Surcharg. Withdraws) | Net Interchange Fee from Networks |
|---|---|---|---|
| June 2012 | 766 | $957.50 | $277.95 |
| July 2012 | 693 | $866.25 | $255.99 |
| August 2012 | 773 | $966.25 | $274.76 |
| September 2012 | 687 | $858.75 | $255.96 |
| October 2012 | 775 | $968.75 | $266.09 |
| November 2012 | 757 | $946.25 | $256.81 |
| December 2012 | 684 | $855.00 | $255.21 |
| January 2013 | 701 | $876.25 | $239.63 |
| February 2013 | 709 | $886.25 | $245.35[2] |
| March 2013 | 836 | $1045.00 | $290.01 |
| April 2013 | 819 | $1023.75 | $287.68 |
| May 2013 | 856 | $1070.00 | $304.98 |
| **Totals:** | **9056** | **$11,320.00** | **$3,210.42** |

**$11,320.00**
**+$ 3,210.42**
**$14,530.42** (total net profit from June 2012-May 2013)

**$14,530.42/365 days = $39.80** (per day net profit from June 2012-May 2013)

**$39.80 x 20 days = $796 TOTAL LOST PROFITS DUE TO PLAINTIFF.**

Accordingly, Plaintiff is awarded $796.00 in lost profits from July 24, 2013 to August 12, 2013. As to the remaining issues on appeal not addressed in the Superior Court's remand decision, this Court relies on its April 14, 2015 Opinion and incorporates it herein. Plaintiff's only monetary claim against Defendant is for lost profits from the lack of use of the ATM; Plaintiff is only paid based on the transactions. Therefore this

[2] Plaintiff's chart in Exhibit P4 lists this number as $235.45. However, a review of page nineteen (19) of Exhibit P4 reflects that the correct Interchange Fee for February 2013 is $245.35.

Court finds that Plaintiff is entitled to recover only for the period July 24, 2013 to August 12, 2013, and based upon prior usage should have recovered $796.00.

## ORDER

**AND NOW**, this *16* day of November, 2016, for the reasons set forth above, this Court finds in favor of Plaintiff and against Defendant, Maximo Lanfranco, d/b/a Maxi Grocery, in the amount of $796.00

BY THE COURT:

_____
**IDEE C. FOX, J.**